JORDAN WOMBLE v. M. T. LEACH.

*Complaint—Conversion—Jurisdiction—Practice—Evidence— Marshalling—Agricultural Supplies—Estoppel.*

1. A complaint for converting a mortgaged crop which avers title to such crop raised by the mortgagor and by him conveyed to the plaintiff, its delivery to the defendant, its value, and its appropriation by the defendant to his own use after demand by the plaintiff, is a concise and definite statement of every material fact upon which the right to recover depends, and complies with section 93 of the code.

2. An action for damages for converting a crop, of greater value than fifty dollars, is not founded on an implied contract, and hence is not within the cognizance of a justice's court.

3. Exceptions will not be heard in this court, alleging a defect of evidence on points not in issue in the court below. ·

4. In this action *to determine the ownership of the cotton*, it is not competent for the court to adjust the equities between the parties growing out of the fact that the plaintiff has also a mortgage on the land which produced the cotton.

5. One who gives a mortgage on a crop to obtain supplies, under the provisions of Bat. Rev., ch. 65, § 19, is estopped from asserting that articles which he receives as a compliance with the contract are not "supplies" within the meaning of the statute ; and a second mortgagee who acquires an interest in the crop after such advances are made, stands in no better plight, and is likewise bound by such admission.

(*Moore* v. *Hobbs*, 77 N. C., 65 ; *Winslow* v. *Weith*, 66 N. C., 432 ; *Clark* v. *Farrar*, 74 N. C., 686, cited and approved.)

CIVIL ACTION tried at Spring Term, 1880, of WAKE Superior Court, before *Gudger, J.*

Verdict for plaintiff, judgment, appeal by defendant.

Mr. A. M. Lewis, for plaintiff.
Messrs Reade, Busbee & Busbee, for defendant.

SMITH, C. J. The plaintiff's claim to the cotton, the recovery of which, or its value, is the object of this action, is derived under an agricultural lien created by a mortgage made March 2, 1877, by one Sandy Williams, pursuant to the provisions of the act of 1867 (Bat. Rev., ch. 65, § 19,) which cotton he alleges has been appropriated by the defendant to his own use.

The defendant's counsel moved that the action be dismissed, and being overruled, put in his answer denying the plaintiff's right and asserting title in himself under a similar instrument executed on the 20th day of the same month.

Issues involving the matters in dispute were submitted to the jury and their responses are all favorable to the plaintiff, and judgment being rendered thereon, the defendant appealed.

The record shows various exceptions taken during the progress of the trial, which will be considered in their proper order:

1. The refusal of the motion to dismiss the action: This is put on the grounds, first, that the complaint does not contain a sufficient statement of a cause of action, and if it does, secondly, that it is not within the jurisdiction of the court. We think neither proposition can be maintained. The complaint avers title to the crop raised by the said Sandy Williams and conveyed by his mortgage to the plaintiff, its delivery to the defendant in the fall of the same year, its value and its appropriation by the defendant, after demand, to his own use. This is a concise and definite statement of every material fact upon which the right to recover depends,

and complies with the requirements of C. C. P., § 93, con-
strued in *Moore* v. *Hobbs,* 77 N. C., 65.

The action is for a tortious taking and withholding of the
plaintiff's property, and the damages claimed therefor are
for more than fifty dollars, of which the superior court has
exclusive jurisdiction.    Acts 1876–'77, ch. 251.    The de-
fendant's counsel argued that as the value of the property
was sought the obligation of the defendant to account there-
for arose out of an implied contract, and under the author-
ity of *Winslow* v. *Weith,* 66 N. C., 432, was cognizable only
before a justice of the peace.    This is a misconception of the
principle of law recognized and acted on in that case.    The
rule is this : When one wrongfully takes the personal prop-
erty of another and sells it, the owner may waive the tort,
affirm the contract of sale and sue for the proceeds, as money
received to his use, and this would be an action upon an
implied contract.

2. During the trial, evidence was offered and, on objec-
tion, admitted to prove that a part of the advances required
by the plaintiff's mortgage was made by him under an or-
der of the mortgagor.    The exception was not pressed in
this court, and is clearly unavailing.    The delivery upon
an order is a delivery for all legal purposes to the person
who gives the order.    It was not necessary for Williams to
go in person for the articles needed, his order answers the
same purpose and the authority, whether in writing or pa-
rol, justifies the delivery.    Nor was the plaintiff bound to
see that the property went to Williams and was used on his
farm.    The plaintiff's duty was discharged by furnishing
them.

3. There were also exceptions taken to the refusal of the
court to give certain instructions to the jury, as follows : (1)
There was no evidence that the cotton converted by defend-
ant was raised on the land of Williams, nor (2) That it was
of the crop of 1877, nor (3) That the advances were made

by the plaintiff after the execution of his mortgage, and (4) That the articles furnished were of the kind required to create the statutory lien, not being "*money* or *supplies*" advanced "to be expended" in the cultivation of the crop.

The identity of the crop conveyed to the plaintiff with that delivered to the defendant is averred in the complaint, not denied in the answer, and is not an issue submitted. The plaintiff in section 2 of his complaint says "that the said Sandy Williams made of the crop of 1877 aforesaid" (referring to the previous allegation of the mortgage of the crop to himself) "one and a half bales of cotton and delivered the same to the defendant on or about the latter part of the year 1877, which said cotton was worth at the time of delivery to the defendant, about sixty-five dollars." The defendant replies: "As to the allegation in the second section of the quantity of cotton made by Sandy Williams, defendant has no knowledge or information sufficient to form a belief," and then proceeds to assert his own title thereto. The second issue is drawn to meet this point only—"What amount of cotton raised by Sandy Williams upon the land mentioned in the mortgage in the year 1877, did the defendant receive from him?" The identity of the cotton was not in controversy, and the jury were only to ascertain as to its quantity and value. The instruction asked was not therefore pertinent to any enquiry and was properly rejected. We do not mean however to intimate that there was not sufficient evidence of the fact if it had been litigated.

The second exception rests upon the same basis and for the reasons given is equally untenable.

The exception that there was no evidence of the delivery of the articles advanced antecedent to the making of the mortgage is equally without support. We are not prepared to say that its validity is at all dependent upon their being furnished after the actual execution of the mortgage deed.

They were furnished the same day and were delivered and accepted as a compliance with the provisions of the mortgage and this would seem sufficient to sustain the conveyance and authorize the recovery. But the plaintiff testifies upon cross-examination that while the advances made by himself, in value $78, were on the same day, and he could not say whether it was before or after the execution of the instrument, it was his practice in such cases, not to deliver till the security was given, and he adds: " *I think I did so in this case.*" This testimony in connection with the transaction itself was sufficient to warrant the jury in finding the delivery of the supplies to be after the making of the deed.

4. The court was also requested and declined to charge that the plaintiff was bound first to apply the land conveyed to him in satisfaction of his debt before the crop upon which the double lien rested. This question does not arise and the adjustment of the equities among different creditors is not before the court. The contention is as to the ownership of the cotton, and if the plaintiff's deed is effectual, as it is prior in time, he has the preferable right.

5. The court was asked to instruct the jury that the mule, collar and harness and wagon were not supplies within the meaning of the statute, and hence the conveyance was inoperative to convey the crop.

There may be and often is, much difficulty in defining the scope and extent of the terms employed in the statute, and in determining whether articles advanced can be properly said to have been used or expended in cultivating the crop. While the body of the mule is not necessarily worn out in the summer's work, his physical energies are employed and " expended " in its production. So plows and other agricultural implements, undoubtedly comprehended in the act, are not often worn out by use for a single season, and may, like the horse or mule, last for several years. The

need of force to draw the plow is as essential as the plow itself to the making of the crop. Where between them will the line of distinction be drawn? We are not willing therefore to concede, in giving effect to the manifest policy of the law, that the services of the mule and if so the mule itself as well as the wagon and harness, are not supplies, expended within its meaning.

In *Clark* v. *Farrar*, 74 N. C., 686, the act is carefully analyzed, and its requirements, in order to the constituting an agricultural lien pointed out and explained, but the construction does not exclude such articles as we have mentioned, and leaves that an open question still. But whether the articles are strictly supplies expended under the statute or not, they are advanced and accepted as a compliance with the contract by the mortgagor, before any interest is acquired by the defendant in the crop, and this removes any objection to the conveyance on that ground. As the mortgagor must determine his own needs in conducting his farm, and the articles are themselves appropriate, and perhaps indispensable to his operations, the acceptance must be deemed conclusive between the parties, and not less so upon the claim of a subsequently derived title. Had the mortgagor refused to take them, or preferred such supplies as are within the restricted sense in which the words are understood by the defendant's counsel, they might with equal convenience have been furnished by the mortgagee, and now to permit the repudiation of the instrument for such reasons would be a fraud upon the plaintiff.

"A mortgage or judgment may be taken and held," says Chancellor KENT, "as a security for future advances and responsibilities to the extent of it, when this is a constituent part of the original agreement, and the future advances will be covered by the lien, in preference to the claim under a junior intervening incumbrance with notice of the agreement." 4 Kent Com., 197. In the note it is said: "The

proposition in the text, it is believed, must be understood with the qualification that the advances must be made before the junior incumbrance is created."

That the crop planted or to be planted upon one's land is *in esse* in the sense that when it springs up, the title vests in the mortgagee, and that the instrument may operate as a mortgage, we will only refer to *Cotten* v. *Willoughby, ante* 75, and to the authorities there cited.

It is suggested that while this may be the effect of such an instrument between the parties to it, it does not extend to a subsequent purchaser or mortgagee of the same property. We think the doctrine is not thus limited, and that the conveyance is equally effectual against both.

This action is prosecuted by the owner of the cotton against one who takes and converts it to his own use, of which the demand and refusal, although not themselves a conversion, are full evidence of such conversion.

There is no error, therefore, in the rulings of the court, and the judgment must be affirmed.

No error.                                    Affirmed.