E. C. KNIGHT, Adm'r of Robt. S. Pitt, v. M. ROUNTREE et al.

*Lien—Mortgage—Surety.*

1. J. executed to P. a mortgage on real and personal property, to secure an existing debt, and also to secure and save harmless the mortgagee from loss by reason of being surety for J. upon a debt due other parties. Subsequently J. executed another mortgage to R., to secure other indebtedness. P. paid off the debt for which he was surety after the execution of the second mortgage; *Held*, that this payment did not discharge his lien, and that it took precedence of the mortgage to R.

2. To constitute an agricultural lien it is essential that the supplies advanced must be furnished *after* the execution of the agreement, or at the time of making it, so that the agreement and advances shall constitute one transaction.

CIVIL ACTION, tried before *Avery, J.*, at Fall Term, 1887, of EDGECOMBE Superior Court.

The plaintiff is the administrator of Robert L. Pitt, who died intestate in the month of May, 1884.

On the 28th of December, 1881, John H. Pitt executed to the intestate a mortgage of a tract of land therein specified, and the crops produced thereon during that year, to secure the payment of a promissory note due to the mortgagee for $1,853.00, dated January 1st, 1878, and payable on demand, with interest at eight per cent., and to indemnify the mortgagee against loss as surety for the mortgagor for a debt—note—for $250.00, due January 1st, 1878, to John Norfleet; and also a note to Atkinson, Cobb & Co. for $778.87, dated the 28th of December, 1881, and due at 60 days, with interest at eight per cent. This mortgage contained a power of sale, to be exercised in case of default made by the mortgagor.

Afterwards, on the 6th day of December, 1882, the said John H. Pitt executed to the said intestate his other mort-

gage of the same land and the crops of cotton produced thereon for that year, which mortgage was duly proven and registered on the 7th day of the same month. The following is a copy of the material part of this mortgage necessary to be set forth here:

"The condition of the above deed is such, that whereas the said Robert S. Pitt has become surety for the said John H. Pitt on a promissory note for four hundred and thirty dollars and seventy-two cents, payable to John Hutchinson, Cashier of First National Bank of Wilson, bearing date Dec. 6th, 1882, and payable thirty days after date; Now, therefore, if the said John H Pitt shall well and truly pay said note when due, and shall save the said Robert S. Pitt harmless by reason of his said suretyship, then this deed shall be void, otherwise it shall be lawful for the said Robert S. Pitt, upon failure of said J. H. Pitt to pay said note, to first seize said crops of cotton and sell the same for cash to the highest bidder, and apply the proceeds of the sale of said cotton to the payment of said note, and if the proceeds of said sale shall be insufficient to pay said note, then the said Robert S. Pitt is hereby authorized to sell said tract of land for cash, and apply the proceeds of sale to the payment of said note, or to such amount as the said Robert S. Pitt may have to pay by reason of his suretyship, and the balance, if any, pay to the order of the said John Henry Pitt."

It was agreed by the parties that the debt so secured is the balance of the debt mentioned in the first above mentioned mortgage as due to Atkinson, Cobb & Co., the mortgagor having reduced this debt by sundry payments to that sum. It was likewise agreed, "that on the 9th of January, 1883, plaintiff's intestate paid off and discharged the note with principal and interest described in the mortgage," the condition of which is set forth above.

Afterwards, on the said 6th day of December, 1882, the said John H. Pitt executed to the defendants his other mort-

gage of the crops produced on the same land during the year 1882, which was duly proven and registered on the 8th of the same month, and the following is a copy of the material parts thereof:

"Whereas, the party of the first part is now engaged or about to engage in the cultivation of various crops upon the following lands, his home tract in Nash, Whitaker's township, adjoining the lands of H. B. S. Pitt and others; and whereas, the party of the first part is now indebted to the parties of the second part in the sum of twelve hundred and thirty-nine dollars and six cents, in the form of account for supplies; and whereas, the parties of the second part have agreed to make advances in money, merchandise and supplies to the party of the first part during the year 1882, to the amount of one hundred dollars ; in consideration of one dollar and for the further consideration herein set forth, the party of the first part hereby conveys to the parties of the second part and their heirs the following real estate and personal property: all cotton, corn and other products now harvested or to be harvested from crops of 1882; also all crops to be cultivated and made upon the above described land during the said year 1882, and upon any other land the party of the first part may cultivate during the said year. The party of the first part further represents that he is the owner in fee simple of all the property above described, and that the same is not encumbered, except by mortgage of $430.00 to R. S. Pitt.    Now, if the said party of the first part shall, on or before the first day of November, 1883, pay the said note and the advances herein agreed to be made, and shall also pay any other amount that the parties of the second part may advance to the party of the first part in addition to the amount herein specified to be advanced, and shall also pay all other debts that the said party of the first part may be owing to the parties of the second part, then this deed and lien is to be null and void."

" On the 6th December, 1882, there was on the plantation described in said mortgages, grown and harvested thereon in the year 1882, seed cotton of the value of six hundred dollars, which on the 5th January, 1883, the defendants seized, sold, and applied to their mortgage debt. The amount secured in the mortgage to Rountree, Barnes & Co. was then due, and was for supplies, money and merchandise furnished the said J. H. Pitt during the year 1882, to enable him to cultivate and harvest said crop. On March 3d, 1884, the said R. S. Pitt sold the land described in the mortgage of 28th December, 1881, under the powers contained therein, to J. H. Cutchin, for the sum of $2,500,00. and applied the same to the payment of the note for $1,853.00 and to the Norfleet note. On the 3d of March, 1884, the indebtedness secured in the mortgage of 28th December, 1881, was as follows: R. S. Pitt note, principal and interest, $2,767.15; balance on the Norfleet note, $252.36; balance on the Atkinson, Cobb & Co. note, $461.30, aggregating $3,480.81.

This action was brought by the plaintiff to recover the cotton so seized and sold by the defendants.

Upon the facts admitted as above stated, it was agreed that, if the Court was of opinion with the plaintiff, judgment should be entered for $430.72, with interest from 9th January, 1883; and if the Court should be of opinion with the defendants, then judgment to be entered for the plaintiff for the sum of $101.26, with interest from 3d March, 1884."

The Court gave judgment " that the plaintiff recover of the defendants the sum of $101.26, with interest from March 3, 1884, together with the costs of this action, to be taxed by the Clerk."

The plaintiff excepted and appealed.

*Mr. John Devereux, Jr.*, for the plaintiff.
*Mr. A. W. Haywood*, for the defendants.

MERRIMON, J., (after stating the case). The case as stated in the record fails to designate with precision, as it should do, the questions which the parties intended to have settled by the appeal, and we are left in large measure to find them, if we can. The record is obscure, and if we fail to discover all of them, such failure must be attributed to the negligence of the parties in presenting their case intelligibly, and as the statute directs.

It seems that the appellees contended, first, that as the intestate of the plaintiff paid the debt of Hutchinson, cashier, &c., specified in the second mortgage executed to him on the second day of December, 1882, which embraced the cotton in controversy, such payment discharged this mortgage absolutely, and therefore their title to the same cotton acquired by the subsequent mortgage to them of December second, 1882, was unaffected by the mortgage to the intestate.

This contention is unfounded. The chief and leading purpose of the mortgage was to indemnify—to save the mortgagee "harmless by reason of his said suretyship." The deed of mortgage passed the title to the cotton to the intestate of the plaintiff, and, by its terms and spirit, contemplated and intended that he might, in the contingency provided against, sell it to pay the debt mentioned, or, if he paid it, as he was bound to do, then sell it to repay himself the money he so laid out. The intent was not simply to secure the payment of the debt to him to whom it was payable, but as well and as certainly to save himself, the surety—the intestate, harmless—and the mortgage continued operative and in full force for that purpose until this should be done, unless he should sooner see fit to discharge it.

The mere fact that the last mentioned debt was a balance of the debt due to Atkinson, Cobb & Co., specified in the first mortgage to the intestate, could not affect adversely the second mortgage to him. It seems that it came about that such balance became the debt to Hutchinson, cashier, &c.,

with the intestate as surety. The latter plainly had the right to take the second mortgage mentioned, embracing the land and cotton, to indemnify himself. We cannot conceive of a reason why he might not.

It seems, also, that the appellees contended, secondly, that the mortgage so executed to them was not simply a mortgage, but that it was as well and in addition a *lien* upon the crops embraced by it, as allowed and created by the statute, (*The Code*, § 1799,) to secure to them money advanced by them to cultivate the land and produce the cotton in question, which lien, as to the crops produced, is superior to the mortgage of the intestate and like mortgages. *Wooten* v. *Hill*, 98 N. C., 48.

The mortgage of the appellees cannot be upheld as a *lien*, under the statute just cited, for advancements of money to the mortgagor, to be expended in the production of the crops, if the same were advanced for that purpose *prior* to its execution. It is settled that such advancements of money and of supplies for such purpose must be advanced *after* the making of the agreement in writing in that respect, in order to create such lien. *Clark* v. *Farrar*, 74 N. C., 686; *Patapsco* v. *Magee*, 86 N. C , 350; *Reese* v. *Cole*, 93 N. C., 87; *Townsend* v. *McKinnon*, 98 N. C., 103.

Now, the crop year of 1882 was nearly if not quite over when the mortgage to the appellees was executed, and it appears, from the recitals in the deed, that the advancements of money were made mainly, if not altogether, before it was executed. It does not appear that they advanced to the mortgagor any money after that time, and if they did, this should have been made to appear.

It was suggested on the argument here, that the appellant ought to be required to apply a part of the money realized for the land, which was a security embraced by both the appellants' mortgages, to the payment of the debt secured by his second mortgage, and thus leave the cotton in question

to the appellees to pay their debt, they having a lien only on that to secure their debt. This cannot be allowed, because the money realized from the land, as appears, was insufficient to pay the debts secured by the first mortgage mentioned.

The parties agreed that the Court should enter judgment for one of two sums of money specified, accordingly as it might be of opinion with the plaintiff or defendants.

What particular questions the Court decided adversely to the plaintiff—the appellant—we cannot clearly learn; we can only infer, with tolerable confidence, that it decided the questions to which we have adverted above, adversely to him, and therefore gave him judgment for the smaller amount. There is, therefore, error. The judgment must be reversed. and judgment entered in the Court below in favor of the plaintiff for the sum of four hundred and thirty dollars and seventy-two cents, with interest thereon from the ninth day of January, 1883, according to the terms agreed. upon by the parties.

Error.